CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ELI J. COHEN (NYBN 5539226)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7443
    FAX: (415) 436-7234
    Eli.Cohen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 3:24-CR-00079 WHO |
| |        3:22-CR-00136 WHO |
| Plaintiff, | |
| | **UNITED STATES' SENTENCING** |
| v. | **MEMORANDUM** |
| | |
| ERLAN EDUARDO CRUZ-ACOSTA, | Court:       Hon. William H. Orrick III |
| | Hearing Date:  June 26, 2025 |
| Defendant. | Hearing Time:  1:30 p.m. |

I.    INTRODUCTION

Defendant Erlan Eduardo Cruz-Acosta ("Cruz-Acosta" or "defendant") has a demonstrated history of sex crime, selling dangerous drugs in San Francisco, and disregarding repeated deportation. For the reasons explained below, considering the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court sentence Cruz-Acosta to: concurrent terms of imprisonment of 57 months as to Case No. 3:24-CR-00079 WHO and 10 months as to Case No. 3:22-CR-00136 WHO; a three-year term of supervised release; forfeiture of $358 in U.S. currency, a digital scale, a machete, and a machete sheath; and a special assessment of $300.

II.    FACTUAL AND PROCEDURAL BACKGROUND

    A.  Criminal History and the Instant Offense

***Prior Criminal History.*** Over the last 20 years, Cruz-Acosta, a Honduran national in the United States without legal status, has been committing serious felonies in this country, being removed, coming back, and committing further crimes. *See* Pre-Sentence Investigation Report ("PSR") ¶¶ 44-48. In 2006, he was convicted of Taking Indecent Liberties with a Child in Virginia. *Id.* ¶ 44. In that case, the defendant, while aged 19, had sexual intercourse with a 12-year-old runaway girl who was staying at his home. *Id.* He admitted to having sexual intercourse with the 12-year-old runaway, but claimed to have believed she was 16 years old. *Id.* He was sentenced to just seven months imprisonment and two years probation. *Id.* He absconded from supervision in 2007 and was found after being arrested in San Mateo County, where he was ultimately convicted of Solicitation. *Id.* ¶ 45. Cruz-Acosta was ultimately returned to Virginia and resentenced to three additional months imprisonment. *Id.* Subsequently, Cruz-Acosta was removed from the United States for the first time, on or about March 13, 2008. *Id.* ¶ 47.

Approximately eight months later, Cruz-Acosta was back in California committing crime. *See* PSR ¶ 46. He was arrested in November 2008, and convicted in January 2009, for Transport/Sell a Controlled Substance in San Francisco, and sentenced to 42 days jail and three years probation. *Id.* He was then arrested for Illegal Reentry Following Removal; he pleaded guilty in February 2009, receiving a sentence of 18 months imprisonment and three years supervised release. *Id.* ¶ 47. He was again removed from the United States to Honduras in June 2010. *Id.* In March 2013, Cruz-Acosta was once again found in the United States, this time near the border in Arizona. *Id.* ¶ 48. He pleaded guilty to Illegal Reentry Following Removal and was sentenced to 30 months imprisonment and three years supervised release. *Id.* ¶ 48. Cruz-Acosta was removed for a third time in July 2016.

Cruz-Acosta reentered the United States at some point after his 2016 removal, ultimately returning to San Francisco. At all times he was an illegal alien and had not obtained permission to reapply for admission to the United States. PSR ¶ 15. He was arrested, under an alias, for selling cocaine base to an undercover officer in the Tenderloin in August 2021 and being in possession of further cocaine base, heroin, and powder cocaine. *Id.* ¶ 52. This case was ultimately dismissed in June 2022. *Id.* In September 2022, he was arrested in the Tenderloin again, this time for Possession of a Controlled Substance for Sale, after he was observed conducting suspected narcotics transactions and found in possession of cocaine, heroin, fentanyl, methamphetamine, and cocaine base. *Id.* ¶ 53. This

case was also dismissed. *Id.*

In November 2023, he was arrested for selling methamphetamine to an undercover officer ("UC") and being in possession for sale of cocaine, cocaine base, heroin, and fentanyl; this conduct underlies Case No. 3:24-CR-00079 WHO. PSR ¶ 11. The UC approached Cruz-Acosta and his co-defendant Hector Omar Funez-Sanchez ("Funez-Sanchez") to purchase methamphetamine. *Id.* Cruz-Acosta asked the UC how much he wanted, and the UC negotiated the purchase of $80 worth. *Id.* Cruz-Acosta took the money from the UC and walked over to Funez-Sanchez, who retrieved methamphetamine from a plastic bag and handed it to Cruz-Acosta. *Id.* Cruz-Acosta then provided the methamphetamine to the UC. *Id.* The UC asked for more methamphetamine consistent with the amount of money provided, and Cruz-Acosta got more from Funez-Sanchez, then provided it to the UC. *Id.* In all, Cruz-Acosta provided 7.8 grams gross weight methamphetamine to the UC. *Id.*

Subsequent to the sale, SFPD officers arrested Cruz-Acosta and Funez-Sanchez, recovering $20 in marked funds, a digital scale, a machete, a machete sheath, $358 in U.S. currency, 29.7 grams gross weight fentanyl, 26.4 grams gross weight cocaine base, 8.9 grams gross weight cocaine, and 4.9 grams gross weight heroin from Cruz-Acosta's person. *Id.* ¶ 12-13.

**B. Procedural Background**

On March 30, 2022, a grand jury in the Northern District of California returned a one-count indictment charging Cruz-Acosta with Illegal Reentry Following Removal, in violation of 8 U.S.C. §§ 1326(a) and (b)(1), and on February 8, 2024, a grand jury in the Northern District of California returned a three-count indictment charging both Cruz-Acosta and Funez-Sanchez with one count of Distribution of Methamphetamine and Aiding and Abetting, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, Cruz-Acosta with one count of Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Funez-Sanchez with one count of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On July 11, 2024, Funez-Sanchez pleaded guilty to one count of Possession with Intent to Distribute Methamphetamine; the Court sentenced him to 15 months imprisonment and three years supervised release.

On November 7, 2024, Cruz-Acosta pleaded guilty to the sole count in the Indictment in Case No. 3:22-CR-00136 WHO, and Counts One and Two in the Indictment in Case No. 3:24-CR-00079

WHO, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B) (the "Agreement"). In the Agreement, for Case No. 3:22-CR-00136 WHO, the parties agreed on a base offense level of 8 under U.S.S.G. § 2L1.2(a), the application of a four-level (+4) specific offense characteristic of a prior Section 1326 conviction under § 2L1.2(b)(1)(A), and a two-level (-2) decrease for acceptance of responsibility under § 3E1.1, for an Adjusted Offense Level of 10. For Case No. 3:24-CR-00079 WHO, the parties agreed on a grouped base offense level of 24 under U.S.S.G. § 2D1.1(c)(8), the application of a two-level (+2) specific offense characteristic of the possession of a machete under U.S.S.G. § 2D1.1(b)(1), and a three-level (-3) decrease for acceptance of responsibility under § 3E1.1, for an Adjusted Offense Level of 23. The parties have reached no agreement regarding Cruz-Acosta's Criminal History Category.

The United States agreed to recommend sentences no higher than the low end of the ranges associated with the Guidelines calculations set forth in Paragraph 7 of the Agreement, and that the sentences run concurrently, provided Cruz-Acosta did not violate the Agreement or fail to accept responsibility.

### III.   OFFENSE LEVEL AND CRIMINAL HISTORY CALCULATIONS

#### A. The PSR's Total Offense Level Calculations Are Correct

The government agrees with U.S. Probation's offense level calculations in the PSR, which are set forth below:

Count Group 1: 3:24-CR-00079-WHO

Counts One and Two are grouped for guideline calculation purposes because the offense level is determined largely on the basis of the quantity of a substance involved. U.S.S.G. § 3D1.2(d); PSR ¶ 21.

a.   Base Offense Level, U.S.S.G. § 2D1.1(c)(8) – at least 100 kg but less than 400 kg converted drug weight, based on the below calculations:                                   24

| Drug Name | Drug Quantity (Gross Weight) | Conversion Factor | Converted Drug Weight |
|---|---|---|---|
| Methamphetamine | 7.8 grams | 2 kg | 15.6 kg |
| Fentanyl | 29.7 grams | 2.5 kg | 74.25 kg |
| Cocaine Base | 26.4 grams | 3.571 kg | 94.274 kg |
| Cocaine (Salt) | 8.9 grams | .2 kg | 1.78 kg |
| Heroin | 4.9 grams | 1 kg | 4.9 kg |
| | | | **190.8 kg total converted drug weight** |

|   |   |   |
|---|---|---|
| b. | Specific Offense Characteristic under U.S.S.G. Ch. 2 | |
|    | U.S.S.G. § 2D1.1(b)(1) – Possession of a machete at time of arrest | + 2 |
| c. | Adjusted Offense Level | 26 |

Count Group 2: 3:22-CR-00136-WHO

|   |   |   |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2L1.2(a) | 8 |
| b. | Specific Offense Characteristics Under U.S.S.G. Ch. 2 | |
|    | U.S.S.G. § 2L1.2(b)(1)(A) – Prior violation of 8 U.S.C. § 1326 | + 4 |
| c. | Adjusted Offense Level | 12 |

Multiple Count Adjustment

Units are assigned pursuant to U.S.S.G. § 3D1.4(a), (b), and (c). One unit is assigned to the group with the highest offense level. One additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious. One-half unit is assigned to any group that is 5 to 8 levels less serious than the highest offense level. Any groups that are 9 or more levels less serious than the group with the highest offense level are disregarded.

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Count Group 1 | 26 | 1.0 |
| Count Group 2 | 12 | 0.0 |
| Total Number of Units: | | 1.0 |

|   |   |   |
|---|---|---|
| a. | Greater of the Adjusted Offense Levels Above: | 26 |
| b. | No Increase in Offense Level Due to Number of Units | |
| c. | Acceptance of Responsibility | -3 |
| d. | Total Offense Level | 23 |

The government also agrees that Cruz-Acosta's criminal history category is III. PSR ¶ 50. A Total Offense Level 23 at CHC III yields a Guidelines range of 57 to 71 months. In the Agreement, the government agreed to recommend sentences no higher than the low end of the ranges associated with the Guidelines calculations agreed upon by the parties, and to recommend that the sentences run concurrently. Because U.S.S.G. § 3D1.1, App. Note 1 dictates that "[f]or purposes of sentencing multiple counts of conviction, counts can be . . . (B) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding[,]" Probation is

correct that the total offense level of 23 should dictate the Guidelines range for all three convictions in this case, and the government may have been in error in agreeing to recommend concurrent sentences at the low end of the Guidelines ranges for each adjusted offense level, rather than one recommendation based on the total offense level. *See* PSR ¶ 76. However, in order to remain in accordance with the Agreement, through which the parties agreed that the adjusted offense level applicable to the charge in the indictment underlying Case No. 3:22-CR-00136 WHO was 10, which yields a Guidelines range of 10-16 months, the government recommends that the Court sentence the defendant to a term of 10 months imprisonment as to Case No. 3:22-CR-00136 WHO, concurrent to its recommendation of 57 months as to Case No. 3:24-CR-00079 WHO. This is permissible under U.S.S.G § 5G1.2(c), which dictates that "[i]f the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law." The grouped counts underlying Case No. 3:24-CR-00079 WHO have the highest statutory maximum, 20 years. 21 U.S.C. § 841(b)(1)(C).

### B. The Government Agrees with Probation's Application of the Sentencing Enhancement Under § 2D1.1(b)(1)

The government further agrees with Probation's recommendation that the two-point sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) applies to this case. This Guidelines section states that it shall apply "[i]f a dangerous weapon (including a firearm) was possessed." The Ninth Circuit has held that district courts should apply a preponderance of the evidence standard when evaluating the application of sentencing enhancements. *United States v. Lucas*, 101 F.4th 1158, 1162 (9th Cir. 2024) (en banc). "[T]he preponderance of the evidence standard is sufficient to satisfy due process for fact-finding under the advisory Guidelines, even when a fact has an extremely disproportionate effect on the sentence." *Id.* That standard is clearly satisfied here, where SFPD recovered a machete from Cruz-Acosta's person at the time of his arrest.

### IV.   SENTENCING RECOMMENDATION

#### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520

F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. United States Probation's Recommendation

Probation has recommended that Cruz-Acosta be sentenced to a term of imprisonment of 36 months; supervised release of three years; forfeiture of $358 in U.S. currency, a digital scale, a machete, and a machete sheath; and a special assessment of $300. PSR at ¶¶ 24-30.

### C. Government's Recommendation

The government respectfully recommends that the Court impose a sentence of: concurrent terms of imprisonment of 57 months as to Case No. 3:24-CR-00079 WHO and 10 months as to Case No. 3:22-CR-00136 WHO; a three-year term of supervised release; forfeiture of $358 in U.S. currency, a digital scale, a machete, and a machete sheath; and a special assessment of $300, as such a sentence appropriately balances the § 3553(a) factors.

#### 1. Nature and Circumstances of the Offense and The History and Characteristics of the Defendant; the Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

Cruz-Acosta's conduct in this case was very serious. He illegally reentered the United States for a *third* time following removal and was caught selling methamphetamine. He had substantial amounts of cocaine, cocaine base, heroin, fentanyl, and a machete on his person. Cruz-Acosta's history and characteristics also support the government's recommended sentence. The defendant is a 40-year-old

man from Honduras with no legal status in the United States. He has been committing crimes in the United States since at least 2005, including a sex crime against a 12-year-old child, and repeatedly dealing drugs. He has been removed from the United States on three separate occasions, and illegally reentered each time, despite being convicted of felony offenses for doing so twice before. He committed his 2007 Solicitation offense while on probation for the child sex crime.

### 2. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

The government's recommended sentence serves not only as specific deterrence to Cruz-Acosta, but also general deterrence to others. Prior 18-month and 30-month federal prison sentences did not deter him from illegally reentering, and his prior state sentences have been much shorter. A more significant sentence is necessary to deter him from continuing his criminal conduct. Such a sentence would also serve as general deterrence to others by communicating that illegally reentering the United States for the purpose of purveying deadly drugs while armed with a machete will be punished appropriately. Cruz-Acosta has proven himself unrepentant and a danger to the American public. The government encourages the Court to view with suspicion Cruz-Acosta's assertion that "he has promised himself he will not be back in this country and is going to stop engaging in illegal activity." PSR ¶ 62.

### 3. The Need to Avoid Unwarranted Sentencing Disparities

As Probation notes in the PSR, the Judiciary Sentencing INformation (JSIN) platform provides that for fiscal years 2019-2023, similarly situated defendants received average and median sentences of 53 and 60 months, respectively. 57 months would be in line with these numbers.

While it is true that co-defendant Funez-Sanchez received a sentence of just 15 months, there are important differences between the two defendants' conduct and histories. First, Cruz-Acosta acted as the facilitator of the sale, interacting with the UC, negotiating the sale, and providing the methamphetamine. Second, Cruz-Acosta was armed with a machete, while Funez-Sanchez was not armed. Third, the government's recommendation for Funez-Sanchez was based in significant part on then-applicable DOJ guidance that cocaine base be treated as powder cocaine for purposes of calculating converted drug weight, as well as discounting packaging weight. Under that guidance, Funez-Sanchez's total converted drug weight yielded a Guidelines range of 21-27 months, and the government

recommended 15 months. That guidance is no longer operative, but even if it were, the total converted drug weight for Cruz-Acosta would still be over 100 kilograms based on the gross weights – not discounting packaging weight – admitted to in the Agreement, and thus yield the same Guidelines range as the 190.8 kilograms converted weight admitted to in the Agreement. Additionally, Cruz-Acosta has a criminal history category of III based on six criminal history points, while Funez-Sanchez had a category II based on two criminal history points. Cruz-Acosta also has a conviction for a sex crime against a child which did not receive criminal history points.

## V.     CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Cruz-Acosta to: concurrent terms of imprisonment of 57 months as to Case No. 3:24-CR-00079 WHO and 10 months as to Case No. 3:22-CR-00136 WHO; a three-year term of supervised release; forfeiture of $358 in U.S. currency, a digital scale, a machete, and a machete sheath; and a special assessment of $300.

DATED: June 19, 2025                                          Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


   ___/s/ Eli J. Cohen_____
ELI J. COHEN
Special Assistant United States Attorney